**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| ERIC MEEKS, | : | Case No. 1:20-cv-331 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| NORFOLK SOUTHERN RAILWAY | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 26)**

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 26). Plaintiff filed a response in opposition (Doc. 32), to which Defendant has filed a reply (Doc. 36). Thus, this matter is ripe for review. For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**.

## FACTS

From November 7, 2000 to May 2, 2019, Plaintiff Eric Meeks was employed with Defendant Norfolk Southern Railway Company at its Cincinnati, Ohio location. (Employee Profile, Doc. 26-2, Pg. ID 157.) On May 2, 2019, Norfolk Southern terminated Meeks for his failure to comply with its "Attendance Policy." (Termination Letter, Doc. 26-16, Pg. ID 390.) Meeks maintains that this termination was improperly based on his disability. (*See* Complaint, Doc. 1.)

## I. The Norfolk Southern Attendance Policy

Norfolk Southern enforces an Attendance Policy, wherein all operating employees are deemed "full-time" and are required to maintain an "acceptable work record." (Attendance Policy, Doc. 26-3, Pg. ID 160.) Employees who fail to meet this expectation can be identified by certain criteria, including: "frequent, or pattern of, weekend layoffs;" "frequent, or pattern of, holiday layoffs;" "frequent personal layoffs;" or "frequent layoffs due to an employee's illness or that of a family member without FMLA certification." (Id.)

Once a supervisor has charged an employee with failure to maintain an acceptable work record, they discipline that employee based on the Attendance Policy's "five step" progressive disciplinary process. (Attendance Policy, Doc. 26-3, Pg. ID 160.) An employee proceeds through each step with each violation of the Attendance Policy. (Id. at Pg. ID 161.) Step one is a letter of caution, step two is a letter of reprimand, step three is a fifteen-day deferred suspension, step four is a thirty-day deferred suspension, and step five is dismissal. (Id.) The Attendance Policy does not provide that any of these steps may be bypassed. (See id.) Though, supervisors have the discretion to repeat steps two, three, or four "for employees who remain in active service and maintain a discipline record free of attendance handling for 24 consecutive months following their last attendance related handling." (Id.)

If an employee anticipates that they will be unavailable for a shift, they are required to notify Norfolk Southern's Crew Management Center ("CMC"). (Jacob Elium Deposition, Doc. 26-4, Pg. ID 164, 170; Eric Meeks Deposition, Doc. 26-5, Pg. ID 203.) Almost all absences are classified as "chargeable" against an employee. (Elium Dep., Doc.

2

26-4, Pg. ID 164, 170.) A chargeable absence may be considered when determining whether an employee failed to maintain an acceptable work record in violation of the Attendance Policy. (*Id.*) When an absence is related to a condition for which the employee has approved FMLA leave, the absence is "non-chargeable." (*Id.*) A non-chargeable absence is not eligible for consideration when determining a violation of the Attendance Policy. (*Id.*)

For an employee to properly notify Norfolk Southern of his intention to take FMLA leave, the employee is required to contact "KEPRO." (Meeks Dep., Doc. 26-5, Pg. ID 224; Elium Dep., Doc. 26-4, Pg. ID 170; Michelle Thompson Deposition, Doc. 26-9, Pg. ID 279-80.) KEPRO is a third-party vendor used by Norfolk Southern to track absences specifically related to FMLA. (Elium Dep., Doc. 26-4, Pg. ID 170.) An employee is expected to provide notice of his intention to take FMLA leave "at least 30 days in advance or at the time that they are taking it." (Thompson Dep., Doc. 26-9, Pg. ID 283.) If an employee fails to comply with Norfolk Southern's notice requirements for a FMLA-related absence, Norfolk Southern will not retroactively designate that absence as FMLA leave. (*Id.* at Pg. ID 283-84; Elium Dep., Doc. 26-4, Pg. ID 178.)

## II. Meeks' Employment with Norfolk Southern

Meeks was hired by Norfolk Southern as a conductor in 1998 and later promoted to locomotive engineer in 2000. (Employee Profile, Doc. 26-2, Pg. ID 157.) As an engineer, Meeks was "on call" for a majority of his shifts. (Meeks Dep., Doc. 26-5, Pg. ID 200, 217.) As an "on call" employee, Meeks was required to be available to drive a Norfolk Southern train whenever he was called to duty. (Elium Dep., Doc. 26-4, Pg. ID 166.) From 2007 to

2015, Meeks received attendance violations on five separate occasions—four were violations of the Attendance Policy for failure to maintain an acceptable work record and one was a violation of the "1st Start Minor" for "marking off sick when called to work." (Employee Profile, Doc. 26-2, Pg. ID 157-58.) Though he had violated the Attendance Policy on four separate occasions, Meeks was only at step three of the Attendance Policy's progressive disciplinary process—likely due to his supervisors' discretionary power to repeat steps two through four. (*Id.*; Attendance Policy, Doc. 26-3, Pg. ID 160-61.)

### a. Meeks' Diagnosis of his Autoimmune Disorder

Sometime in early 2016, while working a shift for Norfolk Southern, Meeks was pulled aside by a supervisor who noticed that he was limping. (Meeks Dep., Doc. 26-5, Pg. ID 204.) Meeks was subsequently placed on leave to determine the cause of his limp. (*Id.*) Eventually, Meeks was diagnosed with an autoimmune disorder. (*Id.* at 206.) Following his diagnosis, Meeks took additional time off to recover before returning to work in December 2016. (*Id.* at Pg. ID 204.)

Soon after returning to work, Meeks met with supervisor Jason Taylor and a second, unidentified supervisor to discuss his diagnosis. (Meeks Dep., Doc. 26-5, Pg. ID 204-06.) At the meeting, Meeks explained his autoimmune disorder and how he would "need leaves of absences for flare-ups" related to that condition. (*Id.*) At that time, Meeks did not qualify for FMLA leave because he had not worked enough hours in the year to qualify. (*Id.* at Pg. ID 206, 212.) So, at that meeting, Meeks and Taylor reached an "agreement" for an accommodation. (*Id.* at Pg. ID 210, 212.) Pursuant to the agreement, Meeks agreed to call Taylor when he took time off for issues related to his autoimmune

4

disorder. (*Id.*) In turn, Meeks maintains that Taylor agreed to not discipline Meeks for those days taken off. (*Id.*) The parties never explicitly agreed that Meeks would be excused from the Attendance Policy. (*Id.* at 212.) Though, while Taylor was Meeks' supervisor, Meeks never received any charges or discipline for any absences. (*Id.; see also* Employee Profile, Doc. 26-2, Pg. ID 157-58.)

### b. Meeks' Sixth Attendance Violation

Sometime in early 2017, Ray Franklin replaced Taylor as one of Meeks' supervisors. (Meeks Dep., Doc. 26-5, Pg. ID 212.) On September 7, 2017, Franklin disciplined Meeks for failing to maintain an acceptable work record for various absences that occurred from May through July 2017. (*Id.* at Pg. ID 215; Employee Profile, Doc. 26-2, Pg. ID 158.) Following this charge, Meeks pulled Franklin aside to explain how those absences were related to his autoimmune disorder. (Meeks Dep., Doc. 26-5, Pg. ID 215.) During this discussion, Franklin noted that he was not aware of Meeks' condition and further opined that he wished Meeks had told him about it before he sent the charge to their division. (*Id.* at Pg. ID 216.) As a result of the charge, Meeks proceeded to step four of the Attendance Policy's progressive disciplinary process and received a fifteen-day deferred suspension. (Employee Profile, Doc. 26-2, Pg. ID 158.)

### c. Meeks' FMLA Approval

At some point, Meeks had worked enough hours to qualify for FMLA leave. On August 8, 2018, Meeks submitted certification documents for intermittent FMLA leave for his autoimmune disorder. (2018 FMLA Certification, Doc. 26-6, Pg. ID 267-68.) His request for intermittent FMLA leave was approved on August 21, 2018. (2018 FMLA

Approval Letter, Doc. 26-7, Pg. ID 270.)

### d. Meeks' Seventh and Final Attendance Violation

From December 27, 2018 to February 27, 2019, Meeks was marked absent from work twenty times. (*See* Work Attendance Calendar, Doc. 26-10, Pg. ID 293-96; Lloyd Dep., Doc. 26-11, Pg. ID 303.) Five of these absences were non-chargeable, as they were related to FMLA leave. (*Id.*) The remaining fifteen were chargeable against Meeks. (*Id.*) On February 27, 2019, CMC sent an email to all of Meeks' supervisors with a calendar identifying these absences. (CMC Email, Doc. 26-12, Pg. ID 315; Work Attendance Calendar, Doc. 26-10, Pg. ID 293-96; Elium Dep., Doc. 26-4, Pg. ID 169.) In the email, CMC noted that the decision for how to handle these absences was left with Meeks' supervisors, but that the next step in the disciplinary process was step five: dismissal. (CMC Email, Doc. 26-12, Pg. ID 315.)

After reviewing this email, one of Meeks' supervisors, Eddie Byrd, charged Meeks with failure to maintain an acceptable work record in violation of the Attendance Policy on March 8, 2019. (Charging Letter, Doc. 26-13, Pg. ID 317-18.) Byrd chose to charge Meeks after he noticed that Meeks exhibited a pattern of frequent layoffs, layoffs on or near the weekend, and extending his rest days. (Byrd Dep., Doc. 26-17, Pg. ID 398-99.) Though Byrd was one of Meeks' supervisors, the parties had never met and Byrd was allegedly not aware of Meeks' autoimmune disorder. (*Id.* at Pg. ID 394, 401; Meeks Dep., Doc. 26-5, Pg. ID 220.)

On that same day, Byrd sent Meeks a letter notifying him that an investigative hearing would be held to determine if he had violated the Attendance Policy as charged.

6

(Charging Letter, Doc. 26-13, Pg. ID 317-18.) Meeks maintains that after he received this letter, he expressed concerns to his physician of "repeated and prolonged illnesses" that he had experienced throughout December 2018 to February 2019 that "were jeopardizing [his] employment." (Eric Meeks Declaration, Doc. 31-1, Pg. ID 501.) Meeks' physician then explained to him that those illnesses were exacerbated by the immunosuppressant medication that he was taking to treat his autoimmune disorder. (*Id.*) Following this discussion, Meeks contacted CMC and informed it that his absences from February 9, 2019 through February 14, 2019 "had been the result of [his] medical condition" and that those absences "should be changed to FMLA." (*Id.* at Pg. ID 501.) Norfolk Southern apparently did not retroactively designate those days as FMLA leave. (*See* Work Attendance Calendar, Doc. 26-10, Pg. ID 293-96.)

On April 17, 2019, the investigative hearing was held. (*See* Hearing Transcript, Doc. 26-14.) At the hearing, Meeks again argued that those absences that occurred from February 9, 2019 through February 14, 2019 should be excused as they were related to an illness that was exacerbated by his autoimmune disorder medication. (*Id.* at Pg. ID 345-46, 348.) Meeks did not offer an explanation for the other nine chargeable absences. (*See id.*) Upon conclusion of the hearing, the hearing officer found that Meeks failed to maintain an acceptable work record in violation of the Attendance Policy. (Termination Letter, Doc. 26-16, Pg. ID 390.) Meeks was subsequently terminated on May 2, 2019. (*Id.*)

## PROCEDURAL POSTURE

On or about July 3, 2019, Meeks filed an administrative charge of discrimination against Norfolk Southern with the Equal Employment Opportunities Commission

7

("EEOC"). (Notice of Right to Sue, Doc. 1-2, Pg. ID 10-15.) The EEOC issued a Notice of Right to Sue on January 29, 2020. (*Id.*)

On April 28, 2020, Meeks initiated the instant matter. He brought forward the following claims against Norfolk Southern: (1) failure to accommodate in violation of 42 U.S.C. § 12101 and Ohio Rev. Code § 4112.02; (2) disability discrimination in violation of 42 U.S.C. § 12101 and Ohio Rev. Code § 4112.02; and (3) FMLA interference in violation of 29 U.S.C. § 2601. (Compl., Doc. 1, Pg. ID 5-6.) Now, Norfolk Southern moves for summary judgment on all of the claims brought against it. (*See* Motion for Summary Judgment, Doc. 26.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). A "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative

8

evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

### I.    Failure to Accommodate Claims

Meeks brings failure to accommodate claims against Norfolk Southern under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Ohio's anti-discrimination statute, Ohio Rev. Code § 4112.02. Because "Ohio disability discrimination law parallels the [ADA] in relevant respects," this Court may "appl[y] the same analytical framework, using cases and regulations interpreting the ADA as guidance in [its] interpretation of Ohio Rev. Code § 4112.02." *Belasco v. Warrensville Heights City Sch. Dist.*, 634 F.Appx. 507, 514 (6th Cir. 2015).

The ADA prohibits discriminating "against a qualified individual with a disability." 42 U.S.C. § 12112(a). An employer can discriminate against an otherwise qualified individual on the basis of a disability when it does not make "reasonable accommodations to the known physical or mental limitations" of the individual, unless the employer can demonstrate that the accommodation would "impose an undue hardship on the operation" of its business. 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure to accommodate claim under the ADA, a plaintiff must show: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about

his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F.Appx. 974, 982-83 (6th Cir. 2011). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.*

Meeks maintains that he was denied reasonable accommodations by Norfolk Southern on two separate occasions. (Response in Opposition, Doc. 32, Pg. ID 542-48.) First, Meeks argues that Norfolk Southern failed to accommodate his autoimmune disorder when it disciplined him on September 7, 2017 for violating the Attendance Policy. (*Id.* at Pg. ID 544-46.) Second, Meeks argues that Norfolk Southern failed to accommodate his autoimmune disorder when it did not retroactively designate his February 9, 2019 through February 14, 2019 absences as non-chargeable, FMLA leave. (*Id.* at Pg. ID 546-48.) The Court will take each argument in turn.

### a. The September 7, 2017 Discipline for Violating the Attendance Policy

Meeks first argues that Norfolk Southern failed to reasonably accommodate his disability when it disciplined him on September 7, 2017 for failing to maintain an acceptable work record due to absences that occurred between May and July 2017. (Response in Opposition, Doc. 32, Pg. ID 544-46.) In response, Norfolk Southern argues that (1) Meeks failed to allege a failure to accommodate claim arising out of the September 7, 2017 discipline and (2) such a claim is otherwise time barred because Meeks failed to timely file an administrative claim related to such discipline. (Reply in Support, Doc. 36, Pg. ID 591-93.) Upon review, the Court is unpersuaded by Norfolk Southern's arguments.

10

### i. Allegations in the Complaint

First, a plain reading of the Complaint shows that Meeks' failure to accommodate claim is, in part, in reference to the September 7, 2017 discipline. In the Complaint, Meeks specifically alleged facts related to his 2017 request for "brief leaves of absences as a reasonable accommodation" for his disability, and Norfolk Southern's failure to provide that accommodation when it disciplined him on September 7, 2017. (Compl., Doc. 1, ¶¶ 12-13.) Within Meek's failure to accommodate claim, Meeks maintains that Norfolk Southern failed to properly grant his "request for an accommodation in the form of job-protected leaves of absences." (*Id.* at ¶ 25.) Meeks also incorporated the factual allegations referencing the September 7, 2017 discipline within his failure to accommodate claim. (*Id.* at ¶ 23.) Thus, a plain reading of Meeks' Complaint clearly shows that his failure to accommodate claim arises, in part, out of Norfolk Southern's September 7, 2017 discipline of Meeks.

The cases cited by Norfolk Southern to argue otherwise are unpersuasive. In those cases, the complaints at issue explicitly omitted facts and claims that were later raised in response to motions for summary judgment. *See, e.g., Desparios v. Perrysburgs Exempted Vill. Sch. Dist.*, 455 F.Appx. 659, 664 (6th Cir. 2012). Here, the arguments Meeks raised in response to Norfolk Southern's motion are sourced from allegations and claims found in the Complaint. Therefore, the Complaint properly alleges a failure to accommodate claim pertaining to Norfolk Southern's September 7, 2017 discipline of Meeks.

### ii. Administrative Exhaustion of the Claim

Norfolk Southern's administrative exhaustion argument is similarly futile.

Norfolk Southern is correct that, pursuant to the ADA, Meeks must first file an administrative charge within a specific time period before he can litigate such claim. *Cox v. City of Memphis*, 230 F.3d 199, 202 n.2 (6th Cir. 2000); *see also* 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5; *Block v. Meharry Med. Coll.*, 723 F.Appx. 273, 277 (6th Cir. 2018). However, this affirmative defense is not jurisdictional and "is subject to waiver, estoppel, or other equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Failure to plead an affirmative defense in the first responsive pleading generally results in a waiver of that defense. *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). "[A] defendant does not waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced." *R.H. Cochran & Assocs., Inc. v. Sheet Metal Workers Int'l Assoc.*, 335 F.Appx. 516, 519 (6th Cir. 2009) (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993)).

Here, Norfolk Southern did not plead Meek's failure to exhaust his administrative remedies as an affirmative defense. (*See* Answer, Doc. 4.) Norfolk Southern also failed to make such argument in the instant motion. (*See* Motion for Summary Judgment, Doc. 26.) In fact, Norfolk Southern's first mention of the ADA's statute of limitations was in its reply in support of its motion for summary judgment. (*See* Reply in Support, Doc. 36, Pg. ID 593.) "It is well established that a party 'cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition.'" *Lusk v. Lamin*, No. 2:20-cv-6064, 2022 U.S. Dist. LEXIS 56341, at *4 (S.D. Ohio Mar 29, 2022) (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002)). Thus, Norfolk Southern waived the

argument that Meeks' claim is time-barred due to his failure to exhaust his administrative remedies.

### iii. Merits of the Claim

Turning to the merits of Meeks' claim, the Court finds that a genuine issue of material fact exists with respect to whether Norfolk Southern failed to accommodate Meeks when it disciplined him on September 7, 2017. Meeks has demonstrated that he requested accommodations to permit him to take non-chargeable leaves of absence in relation to his autoimmune disorder. (Meeks Dep., Doc. 26-5, Pg. ID 204-06, 210-212.) Meeks' supervisor, Taylor, agreed to provide such accommodation, permitting Meeks to take time off for his autoimmune disorder without charging him for violating the Attendance Policy. (*Id.*; *see also* Employee Profile, Doc. 26-2, Pg. ID 157-58.) Norfolk Southern stopped providing this accommodation when Taylor was replaced by Franklin, as evidenced by the September 7, 2017 discipline. (Meeks Dep., Doc. 26-5, Pg. ID 212, 215; Employee Profile, Doc. 26-2, Pg. ID 157-58.)

On September 7, 2017, Franklin disciplined Meeks for his alleged failure to maintain an acceptable work record in violation of the Attendance Policy due to various absences that occurred between May and July 2017. (Employee Profile, Doc. 26-2, Pg. ID 158.) Meeks maintains that those absences were taken in relation to his autoimmune disorder, and he communicated this to Franklin after receiving the charge. (Meeks Dep., Doc. 26-5, Pg. ID 212, 216.) While Franklin may have been unaware of Meeks' disability, (Meeks Dep., Doc. 26-5, Pg. ID 212, 215), the Court has not found any caselaw to suggest that an accommodation may be relinquished if a particular supervisor is not put on notice

of an employee's disability or relevant accommodation. Moreover, Norfolk Southern has not presented any evidence to refute the existence of the accommodation agreement, or that Meeks failed to comply with the terms of that agreement in any way. Further, Norfolk Southern has not presented any evidence to suggest that such an accommodation would impose an undue hardship on it. *See Johnson*, 443 F.Appx. at 982-83.

Thus, genuine issue of material fact exists as to whether Norfolk Southern failed to accommodate Meeks, in violation of the ADA and Ohio's anti-discrimination statute, when it disciplined him on September 7, 2017.

### b. Refusal to Retroactively Designate the February 9, 2019 through February 14, 2019 Absences as FMLA Leave

Meeks next argues that Norfolk Southern failed to reasonably accommodate his disability when it refused to retroactively designate his February 9, 2019 through February 14, 2019 absences as FMLA leave. (Response in Opposition, Doc. 32, Pg. ID 546-47.) However, "[r]efusal to make accommodations apply retroactively is not a per se violation of the ADA." *See Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 882 (S.D. Tex. 2012). "When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'" *Parsons v. Auto Club Grp.*, 565 F.Appx. 446, 449 (6th Cir. 2017) (citing *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012)); *see also Davila v. Qwest Corp.*, 113 F.Appx. 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA.").

Though the precise date is unclear, Meeks did not request that his February 9, 2019 through February 14, 2019 absences be retroactively designated as FMLA leave until after he learned of the investigatory hearing for the charges against him. (Meeks Dec., Doc. 31-1, Pg. ID 501.) Norfolk Southern does not retroactively designate absences as FMLA leave. (Thompson Dep., Doc. 26-9, Pg. ID 283-84; Elium Dep., Doc. 26-4, Pg. ID 178.) So, Norfolk Southern did not retroactively designate Meeks' February 9, 2019 through February 14, 2019 absences as FMLA leave. (*See* Work Attendance Calendar, Doc. 26-10, Pg. ID 293-96.) Though Norfolk Southern did not retroactively designate those absences as FMLA leave, it had no obligation to do so. *See Parsons*, 565 F.Appx. at 449. Thus, Norfolk Southern did not fail to accommodate Meeks' autoimmune disorder when it refused to retroactively designate his February 9, 2019 through February 14, 2019 absences as FMLA leave.

\* \* \*

Thus, Meeks may proceed on his state and federal failure to accommodate claims as it applies to the September 7, 2017 discipline. However, Norfolk Southern is entitled to summary judgment on Meeks' state and federal failure to accommodate claims, as it applies Norfolk Southern's refusal to retroactively designate Meeks' February 9, 2019 through February 14, 2019 absences as FMLA leave, as a matter of law.

## II.    Disability Discrimination Claims

Next, Meeks brings disability discrimination claims against Norfolk Southern under both the ADA and Ohio's anti-discrimination statute. Again, "[t]he Ohio anti-discrimination law mirrors the ADA, so [the Sixth Circuit] applies the legal standard

under the ADA to claims brought under both laws." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (collecting cases). The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Where, as here, the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, we require the plaintiff to establish a prima facie case, followed by the familiar McDonnell Douglas burden-shifting." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008).

To establish a prima facie case of disability discrimination under the ADA, the employee must establish that (1) he was disabled; (2) he was other qualified for the job, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knew or had reason to know of his disability; and (5) the position remained open or a non-disabled person replaced him. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012). If the employee can meet this "not onerous" requirement, then the employer must provide a legitimate explanation for its action, which is also not an onerous burden to satisfy. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019). And, once the employer provides a legitimate reason for terminating the employee, the burden shifts back to the employee to introduce evidence that the employer's explanation is pretextual. *Id.* Importantly, to avoid summary judgment, the employee does not need to prove that the employer's proffered rationale

16

is pretextual—he just needs to prove that a genuine issue of material fact exists as to whether that rationale is pretextual. *Id.*

The Court proceeds on the assumption that Meeks has proven his prima facie case. Norfolk Southern too satisfies its burden of showing that it terminated Meeks for a legitimate, nondiscriminatory reason: his numerous, chargeable absences that violated the Attendance Policy. (*See* Work Attendance Calendar, Doc. 26-10, Pg. ID 293-96; Lloyd Dep., Doc. 26-11, Pg. ID 303.) Absenteeism is a legitimate and nondiscriminatory reason for terminating an employee. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002). Consequently, the burden shifts back to Meeks to show that this reason is pretextual.

The fundamental question in the pretext analysis is: did the employer make the adverse employment decision for the stated reason or not? *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). A plaintiff must produce sufficient evidence such that a reasonable jury could doubt the employer's stated reason for its actions. *McCart v. Univ. of Cincinnati Found.*, No. 1:08-CV-656, 2010 U.S. Dist. LEXIS 34406, at *7 (S.D. Ohio Apr. 7, 2010). Plaintiffs may refute an employer's proffered legitimate reason by showing that the reason (1) has no basis in fact, (2) did not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

Meeks' pretext argument relies on the third method of proving pretext: that the proffered reason was not sufficient to warrant his termination. Meeks maintains that his autoimmune disorder was the underlying cause of his absences in 2017 and 2019.

(Response in Opposition, Doc. 32, Pg. ID 549-50.) In his view, those absences should not have been considered as violations to the Attendance Policy. (*Id.*) If those violations had not been charged against him, Meeks contends, then he would not have been terminated. (*Id.*) For purposes of this motion, the Court need only look to the September 7, 2017 discipline to find that Meeks' argument has merit.

Norfolk Southern disciplined Meeks on September 7, 2017 for failing to maintain an acceptable work record in violation of the Attendance Policy. (Employee Profile, Doc. 26-2, Pg. ID 158.) That charge caused Meeks to proceed to step four of the progressive disciplinary process and receive a fifteen-day deferred suspension. (*Id.; see also* Attendance Policy, Doc. 26-3, Pg. ID 160.) In turn, Meeks was eligible for dismissal—the fifth step in the disciplinary process—for his next violation of the Attendance Policy. (Attendance Policy, Doc. 26-3, Pg. ID 160-161.) Meeks' next violation would occur on March 8, 2019, when Byrd charged Meeks with a failure to maintain an acceptable work record in violation of the Attendance Policy. (*See* Charging Letter, Doc. 26-13, Pg. ID 317-18.)

However, because a genuine issue of material fact exists as to whether Norfolk Southern's September 7, 2017 discipline of Meeks was in violation of the ADA and Ohio's anti-discrimination statute, then genuine issue of material fact exist regarding Norfolk Southern's authority to terminate Meeks on May 2, 2019 for his March 8, 2019 charge. If Meeks were not charged and disciplined on September 7, 2017 for violating the Attendance Policy, he would have remained at step three of the progressive disciplinary process. The Attendance Policy requires Norfolk Southern to proceed through each step

18

of the progressive discipline process and does not provide discretion to its supervisors to bypass steps. (Attendance Policy, Doc. 26-3, Pg. ID 160-161.) Rather, disciplinary steps two through four must be taken at least once before dismissal is appropriate under the Attendance Policy. (*Id.*) So, assuming *arguendo* that Meeks had not been charged and disciplined on September 7, 2017, then Norfolk Southern would not have been permitted to terminate Meeks for his March 8, 2019 Attendance Policy violation charge. In turn, Norfolk Southern's proffered reason for termination may be insufficient, as Norfolk Southern may have failed to properly proceed through the progressive disciplinary process.

The Court finds that genuine issue of material fact exists regarding whether Norfolk Southern's stated reason for its termination of Meeks was pretextual. Thus, Norfolk Southern is not entitled to summary judgment on Plaintiff's state and federal disability discrimination claim.

## III.   FMLA Interference Claim

In Meeks' final claim, he maintains that Norfolk Southern interfered with his FMLA benefits when it failed to retroactively designate his February 9, 2019 through February 14, 2019 absences as FMLA leave. (Response in Opposition, Doc. 32, Pg. ID 552-57.) Pursuant to the FMLA, employees who suffer from "a serious health condition that makes [them] unable to perform the function of [their] position" may take up to twelve weeks of leave per year. 29 U.S.C. § 2612(a)(1)(D). Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by [the FMLA]." 29 U.S.C. § 2615(a)(1). To prove an FMLA-interference claim, a plaintiff must

19

demonstrate that (1) he was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) the plaintiff was entitled to leave under the FMLA, (4) he gave the employer notice of his intention to take leave, and (5) the employer denied (or interfered with) FMLA benefits to which the employee was entitled. *Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014). Employees who seek relief under the interference theory must also establish that the employer's violation caused them harm. *Id.*

An employer may "condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Srouder v. Dana Light Axle Mfg., LLC,* 725 F.3d 608, 614 (6th Cir. 2013); *see also* 29 C.F.R. § 825.303(d). Put another way, "an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave, unless unusual circumstances justify the employee's failure to comply with the employer's requirement." *Id.* at 615; *see also* 29 C.F.R. § 825.303(a)-(c). "[T]he FMLA regulations associate 'unusual circumstances' with communication issues such as the employee's inability to reach a supervisor or designated employee." *Uselton v. CSX Transp., Inc.,* No. 3:13-cv-349, 2014 U.S. Dist. LEXIS 124589, at *11 (N.D. Ohio Sept. 5, 2014) (citing 29 C.F.R. § 825.302(d)). These communications issues may be due to "physical incapacitation or technological issues outside of [the employee's] control." *Id.; see also Barger v. Jackson, Tenn. Hosp. Co., LLC,* 92 F. Supp. 3d 754, 771 (W.D. Tenn. Mar. 13, 2015). If unusual circumstances are not present, an employer is permitted to retroactively designate leave as FMLA with appropriate notice to the employee, though an employer is not required to do so. *See Njaim v. FCA US LLC,* 764 F.Appx. 513, 515 (6th

Cir. 2019) (finding that plaintiff's FMLA interference claim failed because he did not comply with his employer's FMLA-notice requirements and did not otherwise demonstrate unusual circumstances to justify noncompliance).

Norfolk Southern did not interfere with Meeks' FMLA benefits when it refused to retroactively designate his February 9, 2019 through February 14, 2019 absences as FMLA leave. Norfolk Southern requires its employees to provide notice of their intent to take FMLA leave "at least 30 days in advance or at the time that they are taking it." (Thompson Dep., Doc. 26-9, Pg. ID 283.) Meeks did not notify Norfolk Southern that his absences were related to his autoimmune disorder medication until after he was notified of the disciplinary charges brought against him—approximately one month after those absences had occurred. (Meeks Dep., Doc. 31-1. Pg. ID 501; Charging Letter, Doc. 26-13, Pg. ID 317-18.) Meeks does not allege that he was physically incapacitated or otherwise unable to contact Norfolk Southern to justify his noncompliance with Norfolk Southern's FMLA-notice requirement. *Cf. Barger*, 92 F. Supp. 3d at 771 (plaintiff's incapacity was sufficient to create a genuine issue as to whether "unusual circumstances" existed). And Meeks fails to cite to any caselaw that suggests that such an extensive delay caused by one's own mistake or neglect could constitute unusual circumstances. Thus, as no unusual circumstances are present, Norfolk Southern was not required to retroactively designate Meeks' February 9, 2019 through February 14, 2019 absences as FMLA leave.

Therefore, Meeks cannot show that Norfolk Southern interfered with his FMLA benefits. In turn, Norfolk Southern is entitled to summary judgment on Meeks' FMLA interference claim as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (Doc. 26);

2. The Court **GRANTS** Defendant's Motion for Summary Judgment on Count 1 of Plaintiff's Complaint, as it applies to Defendant's refusal to retroactively designate the February 9, 2019 through February 14, 2019 absences as FMLA leave. Thus, Count 1, as it applies to Defendant's refusal to designate the February 9, 2019 through February 14, 2019 absences as FMLA leave, is **DISMISSED WITH PREJUDICE;**

3. The Court **DENIES** Defendant's Motion for Summary Judgment on Count 1 of Plaintiff's Complaint, as it applies to Plaintiff's September 7, 2017 discipline. Thus, Count 1, as it applies to Plaintiff's September 7, 2017 discipline, **SHALL PROCEED;**

4. The Court **DENIES** Defendant's Motion for Summary Judgment on Count 2 of Plaintiff's Complaint. Thus, Plaintiff's state and federal disability discrimination claim **SHALL PROCEED**; and

5. The Court **GRANTS** Defendant's Motion for Summary Judgment on Count 3 of Plaintiff's Complaint. Thus, Count 3 is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND